# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DALE PHILLIPS,
  Petitioner,

 vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
  Respondent.

Case No. 1:12-cv-302

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon,

Ohio, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This

matter is before the Court on the petition and respondent's return of writ. (Docs. 3, 9).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals, First Appellate District set forth the following summary of

facts[1] that led to petitioner's convictions and sentence:

> Christopher Spencer, a store clerk at RIL World clothing store, was shot and
> killed in the store shortly after 3:00 p.m. on November 17, 2007. Video
> surveillance from the store captured the shooter casing the store from the outside,
> then entering and greeting Spencer, "shopping" for about 15 minutes while
> continually checking the front window of the store, piling a mound of
> merchandise on the sales counter, looking again towards the front window and
> ducking down as Spencer totaled the items, then rising up with a gun pointed at
> Spencer, and ultimately firing at Spencer across the counter when Spencer began
> to duck. After that, the shooter came around the side of the counter and fired
> additional shots at Spencer, who had retrieved his own gun. Spencer fired several
> shots but did not strike his shooter. The shooter fled from the store without taking
> any property. The video surveillance did not capture any audio.
>
> Two weeks before the shooting at RIL World, Phillips had robbed the adjacent

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by
a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State
court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." In
the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below,
those findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

Ameristop store. During that robbery, Phillips had brandished a gun and taken money from two cash registers. Phillips pleaded guilty to committing the aggravated robbery at Ameristop before his trial for the offenses committed at RIL World.

(Doc. 9, Ex. 23, pp. 1-2).

## II.    PROCEDURAL HISTORY

### State Trial Proceedings

On November 28, 2007, the Hamilton County, Ohio grand jury returned a five-count indictment charging petitioner with two counts of aggravated robbery, two counts of having weapons while under disability, and one count of aggravated murder. (Doc. 9, Ex. 1). Petitioner, through counsel, entered a plea of not guilty to all counts charged in the indictment.

On December 7, 2007, petitioner, though counsel, filed a motion for a bill of particulars and a demand for discovery. (Doc. 9, Ex. 2, 3). On February 13, 2007, the State filed a bill of particulars and a response to the demand for discovery, as well as a notice of its intent to use evidence of petitioner's prior robbery conviction at trial. (Doc. 9, Ex. 4, 5, 6). Petitioner filed a motion to exclude the evidence of his prior conviction in response. (Doc. 9, Ex. 7). Petitioner also filed a motion to sever the first count of the indictment, aggravated robbery with a firearm specification, from the second count, having weapon while under disability. (Doc. 9, Ex. 9). The filing also included a motion in limine seeking exclusion of the evidence of petitioner's prior robbery conviction. *Id.* On October 20, 2008, after holding a hearing on the matter, the trial court ruled that "the State would be permitted to make reference, in their case, to the matters which are the subject of this indictment, which is the robbery immediately preceding the robbery at which the decedent was killed, but cannot use, in their case, the robbery from five to six years ago, that being too distant in time." (Doc. 9, Trans. of Pretrial 10-20-08, pp. 2-3).

Prior to trial, petitioner filed motions moving the court to allow him twelve peremptory challenges to prospective jurors and to require the prosecutor to state reasons for exercising peremptory challenges. (Doc. 9, Ex. 10, 11). The trial court overruled petitioner's motions. (Doc. 9, Trans. of Pretrial 8-4-08, pp. 23-24).

On October 20, 2008, petitioner withdrew his not guilty plea as to the first two counts of the indictment and entered a plea of guilty to one count of aggravated robbery and two counts of having a weapon while under disability, as well as the specifications associated with each count. (Doc. 9, Ex. 14). For these convictions petitioner received a total prison sentence of twenty-six years of imprisonment. (Doc. 9, Ex. 17). The trial was continued for a jury trial on the remaining counts.

On April 28, 2009, after a jury trial, petitioner was found guilty of the remaining counts of aggravated robbery and aggravated murder, as well as the specifications associated with the two counts. (Doc. 9, Ex. 18). On May 5, 2009, petitioner was sentenced to ten years in the department of corrections for the aggravated robbery conviction and life without parole for the aggravated murder conviction. (Doc. 9, Ex. 19). The sentences imposed were to be served consecutively with each other and consecutively with the twenty-six year sentence previously imposed for the convictions on the first two counts of the indictment. *See id.*

### Direct Appeal

On May 6, 2009, petitioner, through new counsel, filed a timely notice of appeal to the Ohio Court of Appeals. (Doc. 9, Ex. 20). Petitioner presented the following six assignments of error for the court's consideration in his appellate brief, which was filed on February 1, 2010:

1. THE TRIAL COURT ERRED TO PHILLIPS' PREJUDICE BY OVERRULING THE ***BATSON*** CHALLENGE TO THE STATE'S DISMISSAL OF A MINORITY MEMBER OF THE JURY VENIRE.

3

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
It is prejudicial error for the trial court to deny a defendant's **Batson** challenge when the State excuses a minority member of the jury pool without stating race-neutral reasons.

2. DALE PHILLIPS WAS DENIED DUE PROCESS AND PREJUDICED BY THE STATE'S PROSECUTORIAL MISCONDUCT TO CONTINUALLY ASK LEADING QUESTIONS DURING THE DIRECT EXAMINATION OF THE STATE'S WITNESSES.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
When the prosecutor asks leading questions of his own witnesses it unfairly prejudices a defendant's right to a fair trial.

3. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY PERMITTING ALLEGED OTHER BAD ACTS TESTIMONY INTO EVIDENCE TO PHILLIPS' PREJUDICE.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
Whether the trial court committed reversible error by permitting irrelevant and prejudicial evidence to be presented by the State of unrelated alleged bad acts of defendant.

4. PHILLIPS WAS DENIED DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE IMPROPER CONDUCT OF THE ASSISTANT PROSECUTOR DURING THE TRIAL IN ELICITING TESTIMONY THAT PHILLIPS HAD COMMITTED OTHER BAD ACTS, AND BY MAKING IMPROPER COMMENTS DURING OPENING STATEMENT AND CLOSING ARGUMENT.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
Whether the defendant is denied constitutional due process of law by the improper conduct of the prosecution trying their case.

5. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN PHILLIPS' CONVICTION FOR AGGRAVATED MURDER WITH SPECIFICATIONS AND AGGRAVATED ROBBERY.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
When convictions are not supported by sufficient evidence and against the manifest weight of evidence, it constitutes reversible error.

6. THE TRIAL COURT ERRORS AND PROSECUTORIAL MISCONDUCT DEPRIVED PHILLIPS OF HIS CONSTITUTIONAL DUE PROCESS

RIGHT TO A FAIR TRIAL.

ISSUE PRESENTED FOR REVIEW AND ARGUMENT:
When the trial court errs and fails to grant a mistrial, combined with
prosecutorial misconduct, it deprives a defendant of due process.

(Doc. 9, Ex. 21). On February 25, 2011, Ohio appellate court overruled petitioner's assignments

of error and affirmed the judgment of the trial court. (Doc. 9, Ex. 23).

## Ohio Supreme Court

On April 11, 2011, petitioner, through counsel, filed a timely notice of appeal and

memorandum in support of jurisdiction to the Ohio Supreme Court. (Doc. 9, Ex. 24, 25). In his

memorandum in support of jurisdiction, petitioner presented the following six propositions of

law:

1. It is prejudicial error for the trial court to deny a defendant's *Batson* challenge
   when the State excuses a minority member of the jury pool without stating
   race-neutral reasons.

2. When the prosecutor asks leading questions of his own witnesses it unfairly
   prejudices a defendant's right to a fair trial.

3. The trial court commits reversible error by permitting irrelevant and
   prejudicial evidence to be presented by the State of unrelated alleged bad acts
   of defendant.

4. The defendant is denied constitutional due process of law by the improper
   conduct of the prosecution trying their case.

5. When convictions are not supported by sufficient evidence and against the
   manifest weight of evidence, it constitutes reversible error.

6. When the trial court errs and fails to grant a mistrial, combined with
   prosecutorial misconduct, it deprives a defendant of due process.

(Doc. 9, Ex. 25). On June 8, 2011, the Ohio Supreme Court declined jurisdiction to hear

petitioner's case. (Doc. 9, Ex. 27).

## Federal Habeas Corpus

Petitioner filed the instant federal habeas corpus action on April 10, 2012. (Doc. 3). In the petition, petitioner raises four grounds for relief:

**Ground One:** The trial court erred to Phillips' prejudice by overruling the ***Batson*** challenge to the state's dismissal of a minority member of the jury venire.

**Ground Two:** Dale Phillips was denied due process and prejudiced by the state's prosecutorial misconduct to continually ask leading questions during the direct examination of state's witnesses.

**Ground Three:** The trial court erred as a matter of law and abused its discretion by permitting alleged other bad acts testimony into evidence to Phillips' prejudice.

**Ground Four:** Phillips was denied due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution by the improper conduct of the assistant prosecutor during the trial in eliciting testimony that Phillips had committed other bad acts, and by making improper comments during opening statements and closing argument.

*Id.*

Respondent has filed a return of writ in opposition to the petition. (Doc. 9). Respondent contends that petitioner's grounds for relief are procedurally defaulted and waived, not cognizable in federal habeas corpus, or without merit.

## III.    THE PETITION SHOULD BE DENIED

In this federal habeas case, the applicable standard of review governing the adjudication of constitutional issues raised by plaintiff to the state courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied,* 132 S.Ct. 1743 (2012). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but

7

does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. ___, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at ___, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1)

8

requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'" Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)).  The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

**A. Ground One is without merit.**

In Ground One, petitioner contends that the trial court improperly overruled his challenge to the state's dismissal of a minority member of the jury venire under *Batson v. Kentucky*, 476 U.S. 79 (1986).  (Doc. 3, pp. 6-8).

Exclusion of individuals from a jury based on race violates the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79 (1986).  *Batson* forbids race-based peremptory challenges by a prosecutor.  A trial court must engage in a three-step process to evaluate a *Batson* claim:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race.  Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question.  Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-329 (2003) (internal citations to *Batson* omitted).

To make a *prima facie* showing of purposeful discrimination by the prosecutor, a defendant must show he is a member of a cognizable racial group; the prosecutor has exercised peremptory challenges to remove from the jury members of the defendant's race; and any additional facts and circumstances from which an inference could be drawn that the prosecutor used the peremptory challenges to exclude persons from the petit jury on account of their race. *Batson,* 476 U.S. at 96.

Once the defendant makes a *prima facie* showing of purposeful discrimination, the burden shifts to the State to come forward with a race-neutral explanation for challenging black jurors. *Batson,* 476 U.S. at 97. This is an extremely light burden. *Purkett v. Elem,* 514 U.S. 765, 768 (1995) (per curiam). At this step of the inquiry, the explanation tendered by the prosecutor need not be persuasive nor even plausible. *Id.* As the Supreme Court explained in *Hernandez v. New York*, 500 U.S. 352 (1991): "A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez,* 500 U.S. at 360 (plurality opinion).

At the third step of the process, the court must determine whether the defendant has established purposeful discrimination. *Hernandez,* 500 U.S. at 359, 363 (plurality opinion) (citing *Batson,* 476 U.S. at 98). In making this determination, the trial court must assess the plausibility and persuasiveness of the prosecutor's race-neutral explanation. *Rice v. Collins*, 546 U.S. 333, 338 (2006); *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett,* 514 U.S. at 768. "If a prosecutor's proffered reason for striking a

black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." *Miller-El*, 545 U.S. at 241.

The trial court's decision at this step is accorded "great deference" by a reviewing court. *Hernandez*, 500 U.S. at 364 (plurality opinion); *see also Batson*, 476 U.S. at 98 n.21. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because . . . the finding 'largely will turn on evaluation of credibility.'" *Hernandez*, 500 U.S. at 365 (plurality opinion) (quoting *Batson*, 476 U.S. at 98 n.21)).

In the typical case, the decision will turn on whether counsel's race-neutral explanation for a peremptory challenge should be believed, wherein there "will seldom be much evidence bearing on that issue" and the "best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" *Id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). In determining the credibility of the prosecutor's race-neutral explanations, the court must consider the prosecutor's demeanor, how reasonable or how improbable the explanations, and whether the proffered explanation has some basis in accepted trial strategy. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

A trial judge's ruling that the challenge was race-neutral must be upheld unless it is clearly erroneous. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citing *Hernandez*, 500 U.S. at 369). In federal habeas corpus proceedings such as this, the state courts' factual findings on this issue are presumed correct unless petitioner demonstrates by clear and convincing evidence that such findings are erroneous. 28 U.S.C. § 2254(e)(1); *Purkett*, 514 U.S. at 769; *Hernandez*, 500 U.S. at 366 (plurality opinion). "Thus, a federal habeas court can only grant [the] petition if it

was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge."

*Rice,* 546 U.S. at 338.

In this case, the *Batson* issue arose when the prosecutor exercised peremptory challenges

to excuse two prospective jurors. The State first exercised a peremptory challenge against

Prospective Juror Edmonson, an African-American. (Doc. 9, Trial Trans., p. 627). Petitioner

objected based on *Batson v. Kentucky. Id.* at 627-31. In support of the challenge, the

prosecution offered the following reasons for excusing Edmonson:

> Judge, our race neutral reasons have to do with her reluctance on the death
> penalty, although she ultimately said she would not do it, which got her over a
> challenge for cause, she initially stated she felt it was appropriate when the victim
> was a child, and would limit to that circumstance. Only when pressed, did she
> agree to extend that to other circumstances.
>
> Further, she put on her jury questionnaire that she would only view it when guilty
> is proved without doubt. And, obviously, that's not the standard.

*Id.* at 630-31. Based on the "race neutral reasons" offered by the prosecution, the trial judge

overruled petitioner's *Batson* challenge. *Id.* at 631.

The prosecutor also exercised a peremptory challenge to excuse Prospective Juror Allen,

also an African-American. *Id.* at 632-34. Defense counsel again objected on the basis of *Batson.*

*Id.* By way of explanation, the prosecutor stated:

> It's just a juror who, on the death penalty isn't bad for us, and actually we kind of
> would have liked to have. But it's a juror who was locked up on traffic cases, and
> to the point where he's actually filed a lawsuit against Si Leis.
>
> And he's complained about a false arrest and mistaken identi[t]y on cases where I
> think he was the victim, if I'm reading his questionnaire right.
>
> His argument on crime is that we need equal policing throughout the City, as
> opposed to just in some areas; whose brother, I think, was charged with a crime,
> but ultimately acquitted; who noted on his questionnaire, on Page 18, about the
> police, their tactics leave much to be desired.

12

We think he has a bias toward the police, at least based on the things that we've seen.

*Id.* at 633-34. The trial court overruled the *Batson* objection based on the explanation offered by the prosecution. *Id.* at 634. In addition, the trial judge noted that the prosecution's peremptory challenges are "hardly any sort of systematic exclusion of blacks from the jury," noting that both prospective African-American jurors were replaced with other African-American jurors. *Id.* at 634-35.

Petitioner challenged the trial court's rulings on direct appeal. The Ohio Court of Appeals, which was the last state court to render a reasoned decision addressing the merits of petitioner's *Batson* claim, found that petitioner "failed to demonstrate that the trial court's finding of no discriminatory intent was clearly erroneous." (Doc. 9, Ex. 23 p. 3).

The undersigned concludes that the First District Court of Appeals' decision on petitioner's *Batson* claim was not an objectively unreasonable application of *Batson* and its progeny.[2] Petitioner established that he and the two prospective jurors who were excused are African American. However, the explanations given by the prosecution were facially valid and race neutral. The trial judge accepted these explanations as credible and petitioner has not met his burden of showing that it was "unreasonable to credit the prosecutor's race-neutral explanations." *Rice,* 546 U.S. at 338. Petitioner has failed to demonstrate by clear and convincing evidence that such findings are erroneous. 28 U.S.C. § 2254(e)(1). Moreover, upon

---

[2] In addition to the reasons set forth by the Ohio Court of Appeals, this Court notes that petitioner has pointed to nothing in the record to suggest that the prosecutor's justifications for striking Ms. Edmonton and Ms. Allen similarly applied to non-minority jurors who were not struck from the panel. *Cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005). In *Miller-El,* the Supreme Court recognized that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step." This comparative juror analysis is inapplicable in the instant case where petitioner has pointed to no evidence demonstrating that white jurors possessed the same characteristics for which prospective jurors Edmonton and Allen were stricken. Thus, this is not a case where the prosecutor's proffered explanation for striking an African American juror applied to an otherwise-similar non-African American juror who was permitted to serve. *Cf. Miller-El,* 545 U.S. at 241.

review of the trial transcript, this Court agrees with the Ohio Court of Appeals' determination that the record supports the factual bases for the state's peremptory challenges as to prospective jurors Edmonson and Allen.

Accordingly, petitioner has not demonstrated that the state courts' adjudication of his *Batson* claim resulted in a decision that is contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent, or is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §2254(d); *see also Williams,* 529 U.S. at 402-03 (O'Connor, J.).

Further, petitioner has neither cited nor submitted clear and convincing evidence of purposeful discrimination by the prosecution sufficient to rebut the presumption of correctness to be accorded the state courts' conclusion that the prosecution did not discriminate on the basis of race in exercising the peremptory challenges in this case. *See* 28 U.S.C. § 2254(e)(1); *Purkett,* 514 U.S. at 769; *Hernandez,* 500 U.S. at 364-66; *Batson,* 476 U.S. at 98 n. 21.

Therefore, petitioner is not entitled to habeas corpus relief based on his *Batson* claim alleged in Ground One of the petition.

**B. Ground Two is procedurally defaulted and without merit.**

In Ground Two, petitioner argues that he was denied due process and prejudiced by the state's prosecutorial misconduct. (Doc. 3, p. 8). Specifically, petitioner claims the prosecution continually asked leading questions during the direct examination of state's witnesses. *Id.*

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28

14

U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to

preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris*, 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). Moreover, in *Harris*, the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris*, 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The Court stated: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell*, 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten*, 201 F.3d 743, 751 (6th

16

Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

17

In this case, although petitioner raised this claim on direct appeal, the Ohio Court of Appeals found that petitioner only objected to one of the leading questions during trial. On this basis, the appeals court determined that petitioner had waived all but plain error review with respect to the leading questions not objected to at trial. The Ohio Court of Appeals' found that petitioner failed to demonstrate that the prosecution's line of questioning was conduct rising to the level of plain error:

> Phillips second assignment of error, alleging that the prosecutor's use of leading questions during direct examination was misconduct that requires a reversal, is meritless. Leading questions are generally prohibited on direct examination unless used to move the trial forward without influencing the witness's testimony. But to obtain a reversal on the basis of improper leading questions by the state, the defendant must demonstrate not only that the questioning was improper, but that it affected the outcome of the trial. In this case, Phillips only objected to one of the questions he challenges on appeal, and the trial court sustained his objection and struck the answer, eliminating any prejudice. With respect to the other questions, Phillips has waived all but plain error, and he has failed to demonstrate that the prosecutor's line of questioning was conduct that rose to the level of error, much less plain error. Accordingly, we overrule the second assignment of error.

(Doc. 9, Ex. 23, p. 3).

With regard to the alleged errors not objected to at trial, petitioner has procedurally defaulted these claims. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The

Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See Williams v. Bagley*, 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

The Ohio Court of Appeals clearly enforced the state procedural bar with respect to the alleged errors not objected to at trial by reviewing petitioner's assignment of error under plain error analysis. (*See* Doc. 9, Ex. 23, p. 3). As such, the state appellate court's plain-error review did not constitute a waiver of the state procedural default rules. *Seymour v. Weaver*, 224 F.3d 542, 557 (6th Cir. 2000); *see also Goodwin*, 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry denying jurisdiction to hear petitioner's appeal must be presumed to rely on the same state procedural ground. *See Ylst*, 501 U.S. at 803. *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830, 840 (6th Cir. 2003).

Therefore, these claims are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court. *See, e.g., Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262; *Murray*, 477 U.S. at 485. No such showing has been made in this case. Petitioner has not argued, much less demonstrated, cause for his procedural default. To the extent that petitioner may claim that the ineffective assistance of trial counsel constitutes cause for his default, petitioner's argument is unavailing because petitioner defaulted any ineffective assistance of counsel claim by failing to fairly present the claim to the Ohio courts. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (noting that in order for a claim of ineffective assistance of counsel to serve as cause for a procedural default, the ineffective assistance claim must itself be presented to the state courts).

19

Finally, with regard to the single leading question that petitioner did object to at trial, the Ohio Court of Appeals reasonably determined that petitioner was not prejudiced by the alleged error. As noted by the Ohio appellate court, the single objection to the prosecution's use of leading questions was sustained by the trial court and the answer to the question stricken. (*See* Doc. 9, Trial Trans., pp. 744-45). On this basis the Ohio Court of Appeals reasonably determined that petitioner was not prejudiced by the prosecutor's use of a leading question in that instance.

Accordingly, having found that petitioner procedurally defaulted and waived the alleged errors regarding the use of leading questions that were not objected to at trial and that he has failed to demonstrate prejudice resulting from the single instance to which petitioner did object, petitioner is not entitled to habeas relief based on Ground Two of the petition.

**C. Ground Three is not cognizable or procedurally defaulted.**

In Ground Three petitioner argues that the trial court erred as a matter of law and abused its discretion in admitting "other bad acts" testimony into evidence. (Doc. 3, p. 9). Although petitioner does not provide supporting facts in the petition, on direct appeal petitioner argued that the trial court improperly permitted witnesses to testify regarding the robbery of an adjacent Ameristop convenient store two weeks prior to the robbery of the RIL clothing store. (*See* Doc. 9, Ex. 21, pp. 4-6).

In overruling the assignment of error on direct appeal, the Ohio Court of Appeals found that the evidence was properly admitted:

> In his third assignment of error, Phillips challenges the trial court's admission of evidence of his robbery of the Ameristop store. He contends that the evidence amounted to other-bad-acts testimony prohibited by Evid.R. 404(B) and R.C. 2945.59. But the trial court reasonably found that the Ameristop robbery was relevant to establish Phillip's intent to rob RIL world and his motive for the murder. Because Phillip's motive and intent were specifically at issue in the case,

20

and because Evid.R. 404(B) and R.C. 2945.59 both specifically provide for the admission of other bad acts to establish motive and intent, we cannot say that the trial court's decision to allow the evidence for these purposes was an abuse of the trial court's discretion. We note also that the jury was repeatedly reminded of the limited relevance of this evidence.

(Doc. 9, Ex. 23, pp. 3-4).

The admissibility of other crimes or acts under Ohio law is governed by Ohio Rev. Code § 2945.59 and Ohio R. Evid. 404(B).[3] *See State v. Broom*, 533 N.E.2d 682, 689-90 (Ohio 1988). Petitioner challenged the trial court's ruling on direct appeal and before the Ohio Supreme Court according to these provisions of state law and petitioner has not argued that the alleged error resulted in a constitutional violation of any kind in the instant petition. (*See* Doc. 3). To the extent that petitioner challenges the Ohio court's evidentiary ruling, his claim is not cognizable. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) ("[T]o the extent that [petitioner] claims that the trial court's admission of the 'other acts' evidence violated Ohio R. Evid. 404(B), he does not provide a cognizable basis for granting habeas relief."). In addition, this Court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Brooks v. Anderson*, 292 F. App'x 431, 437 (6th Cir. 2008) (quoting *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation marks omitted)).

To the extent that petitioner intended to raise a cognizable claim of constitutional error in Ground Three of his petition, the Court first notes that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). In any event, petitioner has procedurally defaulted any constitutional claim regarding the other bad

---

[3] Under Ohio R. Evid. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

acts testimony because he failed to present the federal issue to the Ohio courts. Petitioner has not demonstrated cause for his procedural default or that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. Therefore, any constitutional claim petitioner intended to raise regarding the prior bad acts testimony is procedurally defaulted and waived.

Accordingly, petitioner is not entitled to habeas relief based on Ground Three of the petition.

**D. Ground Four is without merit.**

In Ground Four, petitioner alleges that the prosecution committed prosecutorial misconduct by introducing the prior bad acts testimony raised in Ground Three of the petition and by making improper comments during opening and closing statements. (Doc. 3, p. 11).

Petitioner raised his prosecutorial misconduct claim to the Ohio Court of Appeals on direct appeal. In overruling the assignment of error, the appeals court ruled as follows:

> In his fourth assignment of error, Phillips contends that prosecutor misconduct denied him a fair trial. In particular, Phillips argues that the prosecutor elicited testimony about Phillip's prior bad conduct, namely, the aggravated robbery of Ameristop, and also referred to this testimony in opening statement and closing argument. But the testimony concerning the Ameristop aggravated robbery was admissible to show Phillip's motive and intent. Thus Phillips has demonstrated no misconduct by the prosecutor in these respects.
>
> Phillips argues also that the prosecutor committed misconduct during closing argument by improperly shifting the burden of proof to him. Even if we agree with Phillip's characterization of the prosecutor's comment as burden-shifting, the record demonstrates no prejudice to Phillips because the trial court not only sustained his objection to the comment but gave it a curing instruction.
>
> Phillips contends that the prosecutor misstated the evidence in two instances. But Phillips cannot demonstrate prejudicial error from these comments because any misstatement was corrected by the trial court after Phillip's objection.
>
> Finally, Phillips challenges the prosecutor's statement urging the jurors to "do justice" in the case. But Phillips failed to object to this comment, and Phillips cannot show that this isolated comment was so inflammatory that it rendered the jury's verdict a product solely of passion and prejudice, not one based on an

appropriate assessment of the evidence. Accordingly, we overrule the fourth assignment of error.

(Doc. 9, Ex. 23, pp. 4-5).

The scope of federal habeas corpus review of petitioner's prosecutorial misconduct claims is narrow because the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although a court confronted with such a claim must first determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, "[t]he touchstone of due process analysis in such a case is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643. "Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Darden,* 477 U.S. at 181. The reviewing court's focus on a claim of prosecutorial misconduct is "the fairness of the trial, not the culpability of the prosecutor." *Smith,* 455 U.S. at 219. A prosecutor's alleged misconduct must be examined within the context of the entire trial to determine whether it deprived a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985). "Reversal is required only if the prosecutor's misconduct is 'so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant.'" *Lundgren v. Mitchell*, 440 F.3d 754, 778 (6th Cir. 2006) (quoting *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court then determines if the statements were flagrant. *Id*. The Court considers four factors in determining flagrancy: (1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant. *Bowling v. Parker*, 344 F.3d 487, 512-13 (6th Cir. 2003); *Macias*, 291 F.3d at 452. *See also Darden*, 477 U.S. at 182; *Young*, 470 U.S. at 12; *Donnelly*, 416 U.S. at 646-647. Other relevant factors include whether the prosecutor manipulated or misstated the evidence, *see Darden*, 477 U.S. at 182; *Berger v. United States*, 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States*, 361 U.S. 212 (1960), or whether a curative instruction was given by the trial judge, *see Darden*, 477 U.S. at 182.

In the instant case, the Ohio Court of Appeals decision was neither an unreasonable application of federal law nor based on an unreasonable determination of the facts. First, as noted above, this federal habeas court is bound by the state court's determination regarding the admissibility of the prior bad acts testimony under the Ohio Rules of Evidence. *See Brooks*, 292 F. App'x at 437. Accordingly, because the Ohio Court of Appeals determined that the testimony regarding the robbery of Ameristop was properly admitted, the appeals court reasonably determined that eliciting the testimony was not improper and did not amount to prosecutorial misconduct. *Cf. Ridgeway v. Berghuis*, No. 06-cv-11070, 2009 WL 804924, at *14 (E.D. Mich.

Mar. 25, 2009) ("It is not prosecutorial misconduct for a prosecutor to offer evidence which is deemed relevant and admissible by the trial court.").

The Ohio Court of Appeals also reasonably determined that petitioner was not prejudiced by the prosecutor's comments during closing arguments or by misstating the evidence. Petitioner first contends that the prosecution committed misconduct by allegedly shifting the burden to the defense during closing arguments. (*See* Doc. 9, Ex. 21, pp. 6-8). In response to the defense's argument that the evidence was insufficient to establish that a robbery took place, the prosecutor argued as follows:

> The first, Mr. Ancona says, very emphatically to you, this is not a robbery. Well, that begs the question, okay, it's not a robbery, what is it? What is it, if not a robbery? Now I listened all through his closing argument. I was hoping I would hear that answer. If it's not a robbery, what is it? Why did he take that gun to the RIL World, to shop? Why is Christopher Spencer Dead today?

(Doc. 9, Trial Trans. p. 1307). Defense counsel objected and moved for a mistrial on the basis that the defense was not required to prove that the incident was not a robbery and that the prosecution therefore improperly shifted the burden to the defense. *Id.* at 1308-09.

As reasonably determined by the Ohio Court of Appeals, petitioner was not prejudiced by the alleged misconduct. Following the objection, the trial judge overruled the motion for a mistrial and specifically informed the jury that "the burden of proof in this case is solely on the State of Ohio." *Id.* at 1311. In light of the trial court's prompt curative instruction, the Ohio Court of Appeals reasonably determined that petitioner was not prejudiced by the alleged error.

Petitioner also contends that the prosecutor misstated the evidence on two occasions. First, petitioner claims that the prosecutor committed prosecutorial misconduct when he made the following statement about the security camera video footage during closing arguments:

> . . . And I guess because you can't hear the words, give it up, or give me your money, or give me what you've got, you can't conclude this is a robbery.

(*See* Doc. 9, Ex. 21, p. 8; Trial Trans., p. 1315). Second, petitioner claims the prosecutor improperly stated that petitioner only lived one block from the scene of the crime. (*See* Doc. 9, Ex. 21, p. 8; Trans. p. 1328-30).

The Ohio appeals court reasonably determined that petitioner's misconduct claims were without merit. With regard to the prosecutor's comments pertaining to the surveillance video the record demonstrates that the prosecutor's comments were in response to the defense argument that there was insufficient evidence for the jury to conclude that a robbery occurred. (*See* Doc. 9, Trial Trans., pp. 1274-81). Furthermore, the comment does not appear to be a misstatement of the evidence as the surveillance video did not in fact include audio. (*See* Doc. 9, Ex. 23, p. 2). Petitioner offers no explanation as to why the comment was otherwise improper nor has he demonstrated that the alleged misconduct deprived him of a fair trial.

Petitioner has also failed to demonstrate prejudice stemming from the prosecutor's comment that petitioner lived in close proximity to the crime scene. Following the statement, defense counsel's objection was sustained and the trial judge issued the following curative instruction:

> Ladies and gentlemen, there was an objection, the objection's sustained. I don't believe there's anything in the record as to where Mr. Phillips was living or staying, so those references in the closing argument are to be ignored by you and are stricken from the record.

(Doc. 9, Trial Trans., p. 1331). The trial court further instructed the jury during jury instructions that "[s]tatements or answers that were stricken by the Court, which you were instructed to disregard, are not evidence, and must be treated as though you never heard them." *Id.* at 1344. Because the trial court corrected any misstatement by the prosecutor through the curative

26

instruction and during jury instructions, the Ohio Court of Appeals reasonably determined that the alleged misconduct did not unfairly prejudice petitioner.

Finally, on direct appeal, petitioner argued that the prosecutor improperly "inflame[ed] the jurors' passion and prejudice by telling them, in essence, it was their duty as a good citizen to convict Dale Phillips of aggravated murder and aggravated robbery in order to achieve justice." (Doc. 9, Ex. 21, p. 8). Because petitioner did not object to the alleged misconduct the Ohio Court of Appeals reviewed the assignment of error under plain error review and therefore petitioner has arguably defaulted the claim. *Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315. In any event, the undersigned is convinced that the comment was neither improper nor did it deprive petitioner of a fair trial. As respondent has argued in the return of writ, the prosecution merely asked that the jury hold petitioner accountable for the charged conduct and do justice for those affected by it. (*See* Doc. 9, Trial Trans. pp. 1340-41). Accordingly, the Ohio Court of Appeals reasonably concluded that petitioner's prosecutorial misconduct claim was without merit.

The Ohio Court of Appeals' determination that the alleged instances of misconduct did not violate petitioner's due process rights was not objectively unreasonable. Petitioner has failed to demonstrate the prosecutor's challenged statements deprived him of a fair trial. Accordingly, petitioner is not entitled to habeas corpus relief based on Ground Four of the petition.

Accordingly, in sum, the undersigned concludes that the Ohio Court of Appeals' adjudication of petitioner's constitutional claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court. Petitioner has not shown that "fairminded jurists could disagree" that the Ohio Court of Appeals' adjudication of the constitutional issues raised in the petition conflicts with the relevant Supreme

Court precedents, or "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *See Harrington*, 131 S.Ct. at 786-87. Therefore, petitioner is not entitled to relief based on the claims alleged in the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition, which have been addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)). *See also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A certificate of appealability should not issue with respect to the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

this Report and Recommendation would not be taken in "good faith," and, therefore, should

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date: 11/4/13

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DALE PHILLIPS,
      Petitioner,

    vs.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:12-cv-302

Barrett, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dale Phillips #605-900
Lebanon Corr. Inst.
PO Box 56
Lebanon, OH 45036

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( *Printed Name*)     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail     ☐ Express Mail
☐ Registered     ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*     ☐ Yes

2. Article Number
*(Transfer from service label)*     7011 3500 0001 5345 9619

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540